1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10  PENNY ARNOLD,

11          Plaintiff,                    CIV. NO. S-10-3119 KJM GGH PS

12      vs.

13  COUNTY OF EL DORADO, et al.,

14          Defendants.                   FINDINGS AND RECOMMENDATIONS
    _____/

15

16          This action, in which plaintiff is proceeding pro se, has been referred to the

17  undersigned pursuant to E.D. Cal. L.R. 302(c)(21).  Previously pending on this court's law and

18  motion calendar for March 3, 2011, was defendants' motion to dismiss the first amended

19  complaint, filed January 28, 2011.  Plaintiff has filed an opposition, to which defendants have

20  filed a reply.  Plaintiff appeared in pro se.  Defendants were represented by Andrew Caulfield.

21          Upon review of the motion, the documents in support, and the oppositions, and

22  good cause appearing therefor, THE COURT FINDS AS FOLLOWS.

23  BACKGROUND

24          Plaintiff brings this action against El Dorado County and two deputy sheriffs, Ken

25  Brown and Scott Crawford, in regard to their treatment of her during two visits to the El Dorado

26  County courthouse.  Plaintiff alleges that these deputies "wrongfully detained [her], utilized

                                         1

1  excessive physical violence and force upon her in a public place, battered her, permanently

2  injured her, and arrested her in violation of her rights as guaranteed her by the United States

3  Constitution, federal civil rights laws, and California law."  (FAC ¶ 1.)  Plaintiff seeks

4  compensatory and punitive damages.

5       Defendants argue that these deputies were carrying out judges' orders when they

6  removed plaintiff from the courtroom, and that therefore they are protected by absolute quasi-

7  judicial immunity.  Defendant El Dorado County argues that there can be no *Monell* liability, as

8  the employer of the deputies, where there is no underlying constitutional violation.

9  DISCUSSION

10      I.  Legal Standards

11      In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

12 a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

13 it must contain factual allegations sufficient to "raise a right to relief above the speculative

14 level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

15 pleading must contain something more...than...a statement of facts that merely creates a suspicion

16 [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice

17 and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

18 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

19 ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

20 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

21 draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

22      In considering a motion to dismiss, the court must accept as true the allegations of

23 the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

24 Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

25 motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

26 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

2

1   that general allegations embrace those specific facts that are necessary to support the claim.'"

2   National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

3   (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

4   Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

5   Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

6          The court may consider facts established by exhibits attached to the complaint.

7   Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

8   consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

9   1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

10  papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

11  1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

12  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

13         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

14  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

15  Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

16      II. Plaintiff's Allegations

17         Plaintiff alleges that defendants first violated her constitutional rights on October

18  6, 2009, while she was in Judge Proud's courtroom, requesting a continuance in a family law

19  matter.  She had been in a car accident wherein she suffered whiplash, a sprained ankle, and

20  back, neck and shoulder injuries, and was taking pain medication.  Judge Proud became enraged

21  with plaintiff and ordered her removal from the courtroom.  (FAC, ¶ 2.)  Plaintiff started to

22  slowly leave the courtroom, using crutches and wearing a cast, when Deputy Brown forcibly

23  pushed plaintiff in her back.  When she asked him to stop, she claims he grabbed her right upper

24  arm, causing her extreme physical pain.  (Id. at ¶ 3.)  Defendant Brown then wrenched both

25  plaintiff's right and left arms behind her back, so that her crutches fell away, and she experienced

26  extreme pain in her neck, head and shoulder areas.  He then jerked plaintiff backward, causing

3

1   her to fall on the floor, hitting her tail bone, back and buttocks.  The entire time, plaintiff claims

2   that Brown was laughing at her and mocking her.  He also told her that she could go to jail or

3   leave the courtroom, but she was physically unable to get herself off the floor at this point.  She

4   had to be taken by ambulance to Marshall Medical Center.  (Id. at ¶¶ 3-4.)  Plaintiff alleges she

5   sustained severe physical and emotional injuries from this incident which are ongoing.  (Id. at ¶

6   4.)

7         The second incident took place on July 16, 2010, in the lobby of the El Dorado

8   County Courthouse.  Plaintiff alleges that she was sitting in the lobby, waiting for her family law

9   matter to be called, which could sometimes take hours, playing games on her cell phone and

10   sending text messages.  (Id. at ¶¶ 7-8.)  Plaintiff alleges that she had been to family court

11   numerous times in the past where she utilized her cell phone in this manner without incident. (Id.

12   at ¶ 9.)  Judge Waggoner walked by and started verbally assaulting plaintiff, accusing her of

13   videotaping with her cell phone.  He then ordered her to his courtroom immediately.  Defendant

14   Deputy Crawford then yelled at her and grabbed her cell phone away, declaring it to be evidence

15   against her.  (Id. at ¶ 9.)  Plaintiff requested that she be permitted to bring her attorney to Judge

16   Wagoner's courtroom.  When Judge Waggoner discovered that the attorney was not there yet, but

17   was on his way, he became more enraged and ordered the two deputies to arrest plaintiff for

18   contempt of court, and refused her request to bring her attorney even though he was just arriving.

19   (Id. at ¶¶ 11-12.)  At this point defendant Crawford grabbed plaintiff and yanked her from her

20   lobby chair, contorting her body in excruciating pain and breaking her bones.  Even though

21   plaintiff screamed out in pain that he was hurting her, Crawford continued, twisting her right

22   arm, back and neck.  (Id. at ¶¶ 13-14.)  Crawford then handcuffed plaintiff and placed her under

23   arrest, even though she was not resisting.  She was then taken to a jury room while courtroom

24   personnel searched her belongings.  She was held there for forty minutes in handcuffs.  (Id. at ¶

25   15-17.)  Plaintiff was then taken to El Dorado County Jail, where she was detained for several

26   hours before she was provided medical care.  (Id. at ¶ 18.)  Plaintiff alleges she sustained severe

1   bodily injuries to her back, neck, shoulder, wrist, and hand, some of which are permanent.  (Id. at

2   ¶ 19.)

3   III.  Analysis

4              A.  The Issues and Summary

5              The major issue in this motion concerns the doctrine of quasi-judicial absolute

6   immunity.  In this case, the individual deputy defendants (Brown and Crawford) seek to have

7   their actions imbued with the cloak of absolute immunity.  The court finds that there is a

8   distinction between the roles of the judge and the deputies such that not all of the deputies

9   actions, even if initiated by a judge's order, are clothed in absolute immunity.  Further, the

10   County misperceives the nature of immunity when applied to an individual's actions.  Even if the

11   entity's employee is entitled to immunity, absolute or qualified, such a finding does not mean

12   that the alleged underlying constitutional violation has been thereby eradicated.  Assuming the

13   existence of a constitutional violation in the first place, and one that may be applied to a

14   municipal entity under the *Monell d*octrine, the violation remains, and the entity gains nothing by

15   the finding of an individual defendant's immunity.

16              B.  Absolute Quasi-Judicial Immunity (First and Third Causes of Action)[1]

17              Because the doctrine of quasi-judicial immunity is derived from judicial

18   immunity, a short discussion of judicial immunity is instructive.  Judges are absolutely immune

19   from civil liability for damages for acts performed in their judicial capacity.  Pierson v. Ray, 386

20   U.S. 547, 553-559, 87 S. Ct. 1213 (1967).  An act is "judicial" when it is a function normally

21   performed by a judge and the parties dealt with the judge in his judicial capacity.  See Stump v.

22   Sparkman, 435 U.S. 349, 362, 98 S. Ct. 1099 (1978).  A judge loses his or her immunity when

23   acting in clear absence of jurisdiction, but one must distinguish acts that are performed in excess

24

25              [1]  The first and third causes of action, respectively, are for engaging in a pattern, practice,
     custom, and policy of unreasonable seizure and wrongful arrest in violation of the Fourth
26   Amendment, and for unreasonable seizure and excessive force in violation of the Fourth
     Amendment.

1  of a judge's authority  (remains absolutely immune) from those acts taken in clear absence of

2  jurisdiction.  Mireles v. Waco, 502 U.S. 9, 12-13, 112 S.Ct. 286 (1991).  Thus, in a case where a

3  judge actually ordered the detainment of an individual by means of excessive force, an act clearly

4  outside of his legal authority, he remained immune because the order was taken in his capacity as

5  a judge and not with the clear absence of jurisdiction.  Id.  Mireles reversed the Ninth Circuit

6  which had equated orders in excess of authority as orders in complete absence of jurisdiction.[2]

7          Defendants Brown and Crawford, as officers of the court, enjoy quasi-judicial

8  immunity insofar as they perform pursuant to a judge's orders.  Coverdell v. Depart. of Social

9  etc., 834 F.2d 758, 764-765 (9th Cir. 1987).  Judicial and quasi-judicial immunity extends to

10  nonjurists "'who perform functions closely associated with the judicial process.'"  In re Castillo,

11  297 F.3d 940, 948 (9th Cir. 2002), quoting Cleavinger v. Saxner, 474 U.S. 193, 200, 106 S. Ct.

12  496 (1985).  It is particularly important to extend such immunity to the judge's subordinates who

13  have acted pursuant to a judge's explicit direction because otherwise these subordinates would

14  become a "lightning rod for harassing litigation aimed at judicial orders."  Kermit Const. Corp. v.

15  Banco Credito y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir. 1976).  The issue here, with the

16  exception of the allegation of unlawful arrest without probable cause, is whether court officers

17  enjoy the absolute immunity to the same extent as judges.  That is, if a judge remains immune

18  from excessive force orders, Mireles, supra, do court officers have that same immunity.

19          Defendants cite Martin v. Hendren, 127 F.3d 720 (8th Cir. 1997), as factually

20  similar to the instant case.  There, the defendant police officer, acting under a judge's order to

21

22      [2] In Mireles, an attorney sued a judge and two police officers after an incident in the
23  courthouse wherein the attorney had failed to appear for the judge's calendar call.  The judge was
    so angered that he allegedly ordered the police officers to "forcibly and with excessive force
24  seize and bring plaintiff into his courtroom."  Id. at 10.  Plaintiff alleged that the officers seized
    him with force and violence and slammed him into the doors of the judge's courtroom.   The
25  court affirmed the Stump rule, to look at the nature and function of the act, not the act itself.  The
    act of ordering police officers to bring the attorney into the courtroom is a function normally
26  performed by a judge.  Id. at 13.  Therefore, the act of bringing the attorney in by using excessive
    force is not dispositive in regard to whether a judge has immunity.

1   remove the plaintiff from the courtroom, used excessive force against the unwilling litigant.  In

2   regard to the judge's order to the *de facto* bailiff to "put the cuffs on her," the majority relied on

3   the Supreme Court's ruling in Mireles v. Waco, supra, which found that a judge's order to use

4   excessive force remained a judicial act warranting absolute immunity.  The Eighth Circuit cited

5   Mireles for the proposition that even though a judge's actions are in error or in excess of his

6   authority, a judge will not be deprived of immunity.  Id. at 722.  The court explained: "Because

7   judges frequently encounter disruptive individuals in their courtrooms, exposing bailiffs and

8   other court security officers to potential liability for acting on a judge's courtroom orders could

9   breed a dangerous, even fatal, hesitation. 'For the criminal justice system to function, ... courts

10  must be able to assume their orders will be enforced.'"  Id., (*quoting* Patterson v. Von Riesen,

11  999 F.2d 1235, 1241 (8th Cir.1993)).

12          Other courts disagree with the Eighth Circuit, however.  In In re Mills v. Lemmon,

13  2008 WL 2937850 (W. Va. 2008), the court pointed to the dissent in Hendren, and distinguished

14  the scenario where personnel carry out the judge's order "in a manner not sanctioned by the

15  judge." (Id. at 279.)  The officer in Lemmon had taken the plaintiff's decedent into custody

16  pursuant to a mental hygiene detention order, but in doing so bashed his head against the kitchen

17  wall, leaving blood on it.  Id. at 275.  The court found that the officer's unconstitutional

18  execution of the order was not authorized by the judge, and therefore he was not entitled to

19  absolute quasi-judicial immunity.  See also Richman v. Sheahan, 270 F.3d 430, 433-34 (7th Cir.

20  2001) (finding no absolute quasi-judicial immunity where fourteen officers restrained plaintiff's

21  decedent, forced him to the floor, sat on him and handcuffed him, despite lack of resistance by

22  decedent who was physically disabled and used a cane); Martin v. Bd. of County Comm'rs, 909

23  F.2d 402, 405 (10th Cir. 1990) ("Neither the rationale nor the express holding of *Valdez* supports

24  defendants' argument that peace officers are absolutely immune from liability for the manner in

25  which they carry out otherwise proper court orders").

26          Prior to the Mireles decision, the Ninth Circuit had stated in dicta that although

7

1   individuals acting at the direction of a judge, such as a sheriff's deputy, normally are protected by

2   quasi-judicial immunity, that immunity "attaches only insofar as the authorization to act extends.

3   Moreover, any authorization to use excessive force could shield neither a judge nor bailiff, we

4   suppose, since that authorization would be clearly outside the jurisdiction of the judge." Gregory

5   v. Thompson, 500 F.2d 59, 65 n. 6 (9th Cir. 1974). Gregory's dicta as applied to judges has been

6   disapproved by Mireles.

7          Here, however, the suit is against the officers who enjoy only quasi-judicial

8   immunity, and Mireles did not address such a situation.  The undersigned joins those cases which

9   distinguish a court officer's carrying out a facially valid judge's order (immune), from the

10  situation where an order is carried out in manner not authorized by the order itself.  Excessive

11  force in carrying out the order does not stem from the nature of the judicial act as the judge did

12  not authorize the amount of force actually used by officers.[3]  The situation here is no different

13  than the situation where a judge orders the arrest of an accused by warrant, but the police utilize

14  excessive force in effecting that arrest.  No one would seriously contend that the officers

15  executing the warrant in such a manner would enjoy any type of immunity.[4]

16         The undersigned is also convinced by cases in analogous situations where a judge

17  may be absolutely immune, but officers carrying out an order are not when they clearly know, or

18  should know, that the order is invalid.   For example, a judge may sign a search warrant that

19  would clearly violate constitutional rights.  The judge would be absolutely immune.  The law

20  enforcement officer who presents or carries out that warrant, however, is not protected by

21

22         [3] Plaintiff does not allege that the "irate" or "enraged" jurists dictated the method by
    which plaintiff was to be handled.  Even if the judge had so dictated, the judge remains immune,
23  but the officer who knew, or should have known, that the order violated clearly established law,
    would not be immune.  See below.
24
           [4] At hearing, the undersigned gave hypotheticals which escalated the force used by a
25  bailiff – to even absurd extremes.  Even defense counsel could not argue for the principle of
    immunity in such a situation; he could only argue that the facts of this case are removed from the
26  hypotheticals in terms of excessiveness.

1   absolute immunity.  See Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092 (1986).  The officer

2   would not even be entitled to qualified immunity if the officer knew or should have known that

3   executing the warrant would violate clearly established law.  Id.  Similarly, where a court

4   receiver carries out a court order to legally seize assets, but in carrying out that legal order, he

5   commits a tort, such as stealing property or committing slander, he loses his  immunity.  New

6   Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1304-05 (9th Cir. 1988).

7          The undersigned is not unmindful of the concerns expressed by defense counsel in

8   regard to the need for officers to be able to enforce court orders in a courtroom situation without

9   a requirement that they consider whether force used is excessive or not, which could result in

10  greater danger to themselves and the public.  However, the requirement to use quick judgment in

11  the courtroom is not any different from that which must be exercised in the field by law

12  enforcement personnel when facing emergent circumstances.  The law does not permit absolute

13  immunity in either case.  For example, defendants should consider the hypothetical where a judge

14  issues an arrest warrant for contempt under the same facts as this case, but where plaintiff had

15  already returned home.  The officers would lose their quasi- absolute immunity if they used

16  excessive force to carry out that order while arresting plaintiff at her house regardless of whether

17  an emergent circumstance arose which required quick, decisive action.  At best, the officers

18  would be entitled to qualified immunity.  The law does not distinguish a case where quick action

19  is needed by officers in the courthouse, as the facts are alleged here, from the hypothetical

20  situation where the officers must exercise quick judgment when arresting plaintiff at her home.

21          However, to the extent that plaintiff alleges that the officers committed an

22  unlawful arrest of her person without probable cause, the individual defendants enjoy absolute

23  immunity.  The officers were following the facially valid orders of the judge when they initially

24  arrested plaintiff.  There can be no liability for following that order.  The court does not view the

25  allegations, even in a light most favorable to plaintiff, that court officers would, or should, have

26  known that any of the judge's arrest/removal/detainment orders were so patently invalid that they

9

1  could not be enforced in a reasonable manner.[5]

2          In sum, there is a difference from a bailiff executing an order of the court in a

3  reasonable manner (quasi-judicial absolute immunity), and executing an order in a manner which

4  violates constitutional rights.  Taking the facts of the complaint as true at this point, even if the

5  facts may appear hyperbolic, this situation falls into the latter category with the exception of

6  plaintiff's claim of unlawful arrest.  The motion to dismiss based on absolute quasi-judicial

7  immunity should be denied except to the extent that plaintiff alleges an unlawful arrest.[6]

8                  B.  Monell Claim (First and Third Causes of Action)

9          Defendants also argue that these claims should be dismissed against the County

10  because if they prevail on their arguments for absolute quasi-judicial immunity, there are no

11  underlying constitutional violations remaining.  This argument fails as plaintiff has overcome a

12  motion to dismiss based on the individual defendants' assertion of quasi-judicial absolute

13  immunity.  But it even more fundamentally fails as entities are not entitled to absolute or

14  qualified immunity.

15          The finding of immunity does not evaporate an underlying constitutional

16  violation; it merely does not permit an action against individuals *despite the violation*.  Thus,

17  given the case law that municipal entities qualify for neither absolute or qualified immunity,

18  plaintiff is free to pursue the entity despite a finding of immunity for individuals, if she has

19  otherwise pled a municipal liability § 1983 claim.  Bateson v. Geisse, 857 F.2d 1300, 1304 (9th

20  Cir. 1988) citing Owens v. City of Independence, 445 U.S. 622, 657, 100 S.Ct. 1398) (1979).

21          Defendants alternatively argue that plaintiff has failed to sufficiently state a

22

23          [5] No inference should be drawn that the undersigned is ultimately finding the arrest orders
of the judges to be valid or invalid at this time.  The undersigned is finding that a court bailiff
24  would have understood the orders to be facially valid – even if, as plaintiff alleges, the orders
were issued when the judges were "enraged."

25

26          [6] As the facts are developed, the officer defendants may seek a determination on qualified
immunity; however, that issue is not before the undersigned at this time.

1   *Monell* claim.  Since there is no respondeat superior liability under § 1983, counties and

2   municipalities may be sued under § 1983 only upon a showing that an official policy or custom

3   caused the constitutional tort.  See Mt Healthy City School Dist Board of Education v. Doyle,

4   429 US 274, 280 (1977); Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691

5   (1978).  "A local government entity cannot be held liable under § 1983 unless the plaintiff

6   alleges that the action inflicting injury flowed from either an explicitly adopted or a tacitly

7   authorized [governmental] policy." Ortez v. Washington Cty., State of Or., 88 F.3d 804, 811

8   (9th Cir.1996) (citation and quotations omitted) (alteration in original) "[L]ocal governments,

9   like any other § 1983 'person,' . . . may be sued for constitutional deprivations visited pursuant to

10  governmental 'custom' even though such a custom has not received formal approval through the

11  body's official decisionmaking channels." Monell, 436 U.S. at 690-91.

12          A local governmental entity may also "be liable if it had a policy or custom of

13  failing to train its employees and that failure to train caused the constitutional violation.  In

14  particular . . . the inadequate training of police officers could be characterized as the cause of the

15  constitutional tort if – and only if – the failure to train amounted to 'deliberate indifference' to

16  the rights of persons with whom the police come into contact." Collins v. City of Harker

17  Heights, 503 U.S. 115, 123-124, 112 S. Ct. 1061 (1992) (fn. omitted), citing in Canton v. Harris,

18  489 U.S. 378, 387, 388, 109 S.Ct. 1197 (1989).

19          The first cause of action alleges that defendants' actions in violating plaintiff's

20  constitutional rights to "be free from wrongful seizure of her person and arrest," constituted a

21  "pattern, practice, custom, and policy" arising from "a discernible and well-documented pattern

22  and practice of ignoring the Constitutionally protected rights of its taxpaying citizens...." (FAC,

23  ¶ 35.)  This is the sum total of facts regarding County policy.   Pro se pleadings are liberally

24  construed.  See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96 (1972); Balistreri

25  v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).   However, liberal construction

26  cannot mean that the court must create facts in order for a claim to be stated.  Plaintiff's

1    allegation is a mere conclusion, and the detailed facts concerning plaintiff's run-in with two

2    judges and several deputies do not serve to establish any County policy whatsoever.  This claim

3    should be dismissed with leave to amend.

4          The third cause of action contains no allegations relating to <u>Monell</u>, but rather

5    alleges only that defendants violated plaintiff's Fourth Amendment rights by physically battering

6    her, handcuffing her, and arresting her without probable cause (the same as the first cause of

7    action).  Therefore, this claim should be dismissed as to defendant County only with leave to

8    amend.[7]

9                    C.  <u>State Law Claims (Second, Fourth and Fifth Causes of Action)</u>

10         Defendants state only two grounds for dismissal under state law: (1) the individual

11   defendants should be dismissed under state law for the same quasi-judicial immunity argument

12   advanced above; (2) the negligence claim against the County should be dismissed because of the

13   lack of a specific statute authorizing a suit for such negligence.

14         Defendants argue that these claims should also be dismissed under California's

15   absolute quasi-judicial immunity which looks to federal law for guidance.  Defendants offer only

16   one state law case on the issue which applied this doctrine according to federal law in regard to a

17   court appointed psychologist, there being no other California cases on point involving a bailiff or

18   court officer.  <u>Howard v. Drapkin</u>, 222 Cal.App.3d 843, 271 Cal. Rptr. 893 (1990).  As <u>Howard</u>

19   applied federal law, and the federal cases cited above are more on point to the instant factual

20   scenario, the undersigned applies those cases to conclude that quasi-judicial immunity does not

21   protect defendants Brown and Crawford, for the reasons stated *supra*.

22   \\\\\

23   \\\\\

24   \\\\\

25

26        [7] The undersigned cannot discern any substantive difference in the claims of the First and
     Third cause of action except that the *Monell* conclusion is pled in the first.

1    The only cause of action for which defendants have argued an alternative ground

2   for dismissal is the negligence claim against the County only.[8]   The County's argument is that as

3   a public entity, it cannot be subject to liability without a specific statute which creates a duty of

4   care on its part.  Defendants' cited case does provide that:

5    '[a] public entity is not liable for an injury,' '[e]xcept as otherwise
        provided by statute.' ( Gov.Code, § 815.) In other words, direct tort
6        liability of public entities must be based on a specific statute
        declaring them to be liable, or at least creating some specific duty
7        of care, and not on the general tort provisions of Civil Code section
        1714." ( Eastburn, supra, 31 Cal.4th at p. 1183, 7 Cal.Rptr.3d 552,
8        80 P.3d 656, italics omitted.)

9   Munoz v. City of Union City, 120 Cal. App.4th 1077, 1112, 16 Cal. Rptr.3d 521, 548 (2004).

10   The amended complaint alleges only that defendants owed plaintiff a duty of care, and that they

11   were negligent in handling both incidents.  (FAC, ¶ 54.) Cal. Govt. Code § 815.2 does provide

12   for vicarious liability on the part of a public entity where its employees commit torts within the

13   scope of their employment, Munoz, supra.  Cardinal v. Buchnoff, 2010 WL 3609489 (S.D. Cal.

14   2010) (citing Van Ort v. Estate of Stanewich, 92 F.3d 831, 840 (9th Cir. 1996).  Reading the

15   complaint liberally, one can construe plaintiff's state negligence claim against the County as one

16   for vicarious liability.  Any distinction between direct liability and vicarious liability can be made

17   clear in jury instructions.  While the County cannot be directly sued for negligence, at least under

18   the present allegations, the County shall remain a potentially, vicariously liable defendant for the

19   negligence claim.[9]

20   CONCLUSION

21    For the reasons stated herein, IT IS RECOMMENDED that:

22    1.  Defendants' motion to dismiss, filed on January 28, 2011 (dkt. # 8), be denied

23

24    [8]  Defendants Brown and Crawford make no argument for dismissal as to the negligence
claim on grounds other than quasi-judicial immunity.

25

26    [9]  The court need not determine whether other state statutory immunities or exceptions
from suit are applicable as none have been proffered at this point.

1  in all respects except as to (2), (3), and (4) below;

2       2.  All claims with respect to unlawful arrest should be dismissed with prejudice;

3       3.  The first cause of action (*Monell*) should be dismissed as to defendant County

4  of El Dorado with leave to amend;

5       4.  To the extent that the third cause of action is any different from the first, and

6  plaintiff is attempting to allege a *Monell* claim, it too should be dismissed with leave to amend;

7  and

8       4.  An amended complaint be filed, or defendants be directed to file and serve an

9  answer to the remaining claims as appropriate within twenty-eight (28) days of an order adopting

10  these findings and recommendations.

11       These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

13  fourteen (14) days after being served with these findings and recommendations, any party may

14  file written objections with the court and serve a copy on all parties.  Such a document should be

15  captioned "Objections to Magistrate Judge"s Findings and Recommendations."  Any reply to the

16  objections shall be served and filed within fourteen (14) days after service of the objections.  The

17  parties are advised that failure to file objections within the specified time may waive the right to

18  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

19  DATED: 03/14/2011

20                              /s/ Gregory G. Hollows

21                              _____
                               GREGORY G. HOLLOWS
                               U. S. MAGISTRATE JUDGE

22  GGH:076/Arnold3119.mtd.wpd

23

24

25

26

14